# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### ASHLAND

**CIVIL ACTION NO. 04-cv-230**

**KATHERINE BOGGS**                                                    **PLAINTIFF,**

**v.**                    **MEMORANDUM OPINION AND ORDER**

**HARTFORD LIFE & ACCIDENT**
**INSURANCE CO.,**                                                      **DEFENDANT.**

This matter is before the Court upon the Plaintiff's Motion for Summary

Judgment [Record No. 9], the Defendant's Motion to Strike [Record No. 12], and

the Defendant's Motion for Judgment on the Merits [Record No. 8]. The Court,

having reviewed the record and being otherwise sufficiently advised, hereby

overrules the Plaintiff's Motion for Summary Judgment, and sustains the

Defendant's Motion to Strike and Motion for Judgment on the Merits.

*FACTS:*

Plaintiff, Katherine Boggs, filed this action on November 24, 2004, alleging

that Hartford Life & Accident Insurance Company ("Hartford") wrongfully denied

her benefits under §§ 1332(c)(1) and 1332(f) of the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001, et seq. (hereinafter "ERISA"). Before the

Court are the Plaintiff's Motion for Summary Judgment and Defendant's Motion

for Judgment on the Merits.

Plaintiff was employed for approximately four years as a full-time pharmacy technician at the Wal-Mart store in Morehead, Kentucky.  Hartford is the short and long-term disability plan administrator for Wal-Mart, and Plaintiff participated in the short-term disability plan ("the Plan").[1]

The Plan provides that "[i]f, while covered under this Benefit, you become totally and continuously disabled because of: (1) injury; (2) sickness; or (3) pregnancy, The Hartford will pay a Weekly Disability Benefit as shown in the Plan of Insurance."  The Plan defines "Totally Disabled" as "you are unable to do the material and substantial duties of your occupation.  Your occupation includes similar job positions with the employer which may be offered to you with a rate of pay 60% or greater of your pre-disability."

The Plan further provides that benefits will commence on the 15th day of disability and "will terminate on the earliest of:

(1) the date the policy terminates;

(2) the date premium payment is due but not paid by the Policy holder;

(3) the last day of the period for which you make any required premium contribution, if you fail to make any further required

---

[1]     Plaintiff's last rate of pay was $8.62 per hour.

contribution; or

(4) the date your employment terminates.

> This means that you have ceased active full-time work in an eligible class.

> If your employment terminates because of: (a) injury; (b) sickness; or (c) pregnancy, your Weekly Disability insurance:

> (a) may be continued while you remain disabled until the end of the period for which you are entitled to weekly benefits; and

> (b) if terminated, may be reinstated on the date on which you return to active full-time work."

Finally, the Plan sets forth that "[t]he Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy" and provides that "[t]he Hartford reserves the right to determine if proof of loss is satisfactory." The Wal-Mart Associate Benefit book specifies that "[i]f you are not actively at work at the time you become totally disabled due to temporary layoff or approved leave of absence, you will continue to be eligible for benefits for 90 calendar days."

On May 9, 2002, Ms. Boggs left work and went to the emergency room at St. Clair Medical Center in Morehead. She complained of abdominal pain radiating to her back. On May 11, 2002, she returned to work but found it necessary to return to the emergency room on May 12, 2002, as her symptoms

remained unchanged.  Dr. Paul Lewis began treating Plaintiff on May 14, 2002

and removed her from work.  Ms. Boggs has not worked since May 11, 2002.[2]

On May 28, 2002, Plaintiff submitted her claim for disability benefits to

Hartford (following the 14-day elimination period provided under the Plan),

claiming disability due to severe side pain and listing her last day of work as May

11, 2002.  On May 30, 2002, Hartford advised Plaintiff by letter that they were

denying her claim for benefits.  In the letter, Hartford explained as follows: "Dr.

Lewis' office submitted a telephonic Attending Physician's Statement on 5/28/02,

and indicated that your diagnosis is abdominal pain.  Dr. Lewis did not indicate

any restrictions or limitations and the severity of your condition has not been

medically supported.  Based on our experience with the diagnosis, the normal

recovery time is less than 14-day elimination period.  Therefore, you do not meet

the 14-day elimination period necessary to receive plan benefits."  Hartford

requested specific office notes and test results from May 14, 2002, if Ms. Boggs

---

[2]        By notice dated June 21, 2003, Ms. Boggs was awarded Social Security Disability
benefits with an effective disability date of May 14, 2002. Defendant argues, however, that the
Court may not consider whether Plaintiff is disabled for Social Security purposes because the
Court's review of the evidence is limited to the administrative record, *See, Perry v. Simplicity
Engineering*, 900 F.2d 963, 966 (6th Cir. 1990).  As there is no evidence in the record to suggest
Plaintiff was granted benefits under the Social Security Act, the Court declines to consider such
evidence.  Moreover, the Court finds persuasive Sixth Circuit case law holding that claims
administrators of disability insurance plans under ERISA are not bound by decisions of the
Social Security Administration. *Fuller v. Retirement Plan for Salaried Employees of Brown and
Williamson Tobacco Corp. and Certain Affiliates*, 1997 WL 10952, at *4 (6th Cir. 1997).

-4-

desired further evaluation, and advised her of her right to appeal under ERISA.

Plaintiff subsequently submitted additional information to Hartford for review, including an updated report from Dr. Lewis dated June 17, 2002. However, those records revealed essentially normal findings. By letter dated June 17, 2002, Hartford again denied Plaintiff weekly benefits, claiming that the information submitted by Dr. Lewis was insufficient to establish the severity of her condition and that Dr. Lewis had imposed no restrictions or limitations to substantiate Ms. Boggs' inability to work.

On August 13, 2002, Plaintiff underwent lumbar x-rays, which revealed "Spondylolisthesis at L3-4." The x-ray report recommended further evaluation with an MRI. On August 16, 2002, Dr. Lewis signed a slip stating that Plaintiff was disabled beginning August 16, 2002. He further opined that she could return to work on November 2, 2002. The MRI of August 28, 2002, confirmed "1. Multilevel degenerative disc disease with mild to moderate central canal stenosis at L4/5..."

Ms. Boggs appealed Hartford's decision and submitted further information in support of her claim – specifically, a note written by Dr. Lewis dated September 7, 2002, indicating that Ms. Boggs was disabled by "multi-level degenerative disc disease and spinal stenosis at L-4 and L-5." By letter dated October 4, 2002,

Hartford wrote to Plaintiff's attorney to advise that the denial of weekly benefits had been upheld on appeal. According to Hartford, disability coverage expires 90 days after the last day of work, and Dr. Lewis' records and reports did not establish total disability until August 16, 2002, which was more than 90 days after Plaintiff's last day of work.

On October 10, 2002, Plaintiff again submitted additional medical information in an attempt to establish her May 14th date of disability – specifically, a letter from Dr. Lewis stating that "[t]his 44 [year old] lady has been unable to work 5-14-02 through 11-1-02 due to back disease." Hartford again denied benefits by letter dated November 4, 2002, stating that the medical information failed to establish the severity of Ms. Boggs' condition and her inability to work.

Plaintiff again submitted medical information to Hartford. Thereafter, Hartford referred the claim file to Dr. F.B. Dibble, Jr., a board-certified physician, for review and consultation with Plaintiff's treating physicians. Dr. Dibble formulated a report, wherein he opined that Ms. Boggs suffered from chronic abdominal pain, which was primarily due to a gastrointestinal condition that had existed for at least six months without impairing her ability to work.

In formulating his report, Dr. Dibble spoke with Dr. Matthew Miller. Dr. Miller told Dr. Dibble that Plaintiff's "symptoms were out of accord with her

objective findings," and that in his experience with individuals with biliary pain, the pain should not be of such magnitude to interfere with the daily activities of employment. Similarly, Dr. Dibble spoke with Dr. Lewis, who opined that "it was the subjective nature of Ms. Boggs' symptomatology that was interfering with her ability to carry on the activities of her employment." Dr. Lewis described Plaintiff's symptoms complex as vague and stated that his working diagnosis was functional bowel disease.

On November 19, 2002, Dr. Dibble submitted his report. By letter dated November 25, 2002, Hartford denied Plaintiff benefits for the final time. Hartford explained that: "there is no evidence in the record that you have any limitations of your physical abilities." Therefore, Hartford determined that Ms. Boggs did not have a condition supporting disability beyond the 14-day elimination period under the Plan. In denying Plaintiff benefits, Hartford cited the independent review by Dr. Dibble, which ultimately concluded "that there is no evidence that [Ms. Boggs] has any physical limitation that would preclude her from undertaking the physical demands of her previous employment as a pharmacy technician."

The November 25, 2002, denial letter was a final decision on appeal and concluded administrative review of Plaintiff's claim. Plaintiff continues to argue, however, that she was totally disabled as of May 12, 2002, and should have been

-7-

determined eligible for weekly disability benefits under the Plan. Specifically, Plaintiff demands the full eligibility period under the plan (26 weeks) at 60% of her rate of pay of $8.62 per hour, a total of $5378.88, plus pre-judgment interest, costs and her attorney fees.

Upon review of the record and for the reasons set forth more fully herein, the Court concludes that Hartford's decision to deny Ms. Boggs disability benefits under the Plan was not arbitrary and capricious. Accordingly, the Court will overrule Plaintiff's Motion for Summary Judgment and sustain the Defendant's Motion for Judgment on the Merits.

*ANALYSIS:*

As a preliminary matter, the Court must address the Defendant's Motion to Strike. Specifically, the Defendant seeks to strike a treatment note by Dr. Paul Lewis dated October 31, 2002, which was attached to Plaintiff's Motion Summary Judgment. The Plaintiff does not oppose the motion. Accordingly, the Court will sustain the Motion to Strike.

Turning to the dispositive motions, the Court notes that a district court reviewing a claim for wrongful denial of benefits under ERISA is to "conduct a...review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare System, Inc.*,

-8-

150 F.3d 609, 619 (6th Cir. 1998). The standard of review is whether the administrator's decision is arbitrary and capricious. *Firestone Tire v. Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under the arbitrary and capricious standard of review, the reviewing court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). The administrator's decision must be upheld if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

While Plaintiff concedes that the arbitrary and capricious standard of review applies to this action, Plaintiff argues that the Court is required to weigh Hartford's conflict of interest as a factor in determining whether its decision was arbitrary and capricious. Plaintiff cites *Firestone, supra* at 115 in support of this contention. However, as correctly pointed out by the Defendant, the Sixth Circuit has held that such a "requirement applies...only where there is 'significant evidence' that the insurer was motivated by self-interest." *Wages v. Sandler O'Neill & Partners, L.P.*, 2002 WL 339221, *3 (6th Cir. 2002), citing *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998); *Hurse v. Hartford Life and Acc. Ins. Co.*, 77 Fed. Appx. 310, 2003 WL 222335532 (6th Cir. 2003)

("Along with the inherent structural conflict presented in this case, the plaintiff must provide some specific evidence suggesting that Hartford acted in bad faith."), citing *Peruzzi, supra* at 433; *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981 (7th Cir. 1999) (noting that "it is unsound for the judiciary automatically to impute" a corporate fiduciary's short-term self-interest to the individuals making claims determinations on its behalf).

The Defendant maintains that the Court need not consider any potential conflict of interest as a factor in this case because Plaintiff has not pointed to any significant evidence suggesting that Hartford's decision was motivated by self-interest. To the contrary, Defendant points out that it hired an independent physician to evaluate Plaintiff's claim and relied on that assessment in denying Plaintiff benefits. The Court agrees. Although Plaintiff alleges that Hartford's denial of benefits is suspicious because it repeatedly changed its reasons for denying her claim, the Court concludes that once Hartford determined Plaintiff to be out of the disability period, it was not required to determine whether Plaintiff was disabled until Plaintiff alleged disability beginning on May 12, 2002. The Court finds that Hartford conducted the appropriate investigation at that time. Accordingly, the Court will not weigh conflict of interest by Hartford as a factor in determining whether the Administrator's decision was arbitrary and capricious.

Plaintiff nonetheless argues that Hartford's denial of benefits is arbitrary and capricious because Hartford relied on Dr. Dibble's report in denying her benefits, which according to Plaintiff, is "wholly contrary to the clear and consistent record and cannot form any factual basis for denial of benefits." According to Plaintiff, the record reflects a course of condition and treatment that dates back to her May 12, 2002, inability to continue work. Specifically, Plaintiff maintains that Dr. Lewis' report of September 7, 2002, which recites her back condition per the MRI, is consistent with the symptoms she reported during the May 9, 2002, emergency visit – pain radiating to the back; the May 12, 2002, visit – radiating flank pain; the May 24, 2002, evaluation – pelvic pain radiating to her right flank; and the August 13, 2002 visit leading to the MRI – "abdominal & low back pain." According to Plaintiff, Hartford ignored the inconsistency of Dr. Dibble's report with the foregoing medical records.

In response, Hartford concedes that Dr. Lewis submitted a prescription slip stating that Plaintiff had been unable to work from May 14, 2002 through November 1, 2002 due to back disease. However, when Dr. Lewis spoke with Dr. Dibble, he clarified that it was "the subjective nature of Ms. Boggs' symptomatology that was interfering with her ability to carry on the activities of her employment." Dr. Lewis "described her symptoms as vague, and stated that

-11-

his working diagnosis was functional bowel disease."

Indeed, Hartford alleges that the objective medical testing did not support Plaintiff's allegations of debilitating abdominal pain. Even the MRI, which showed degenerative disc disease with "mild to moderate central canal stenosis at L4/5" revealed no disc herniation or other problems which would cause severe and debilitating pain.

Plaintiff's arguments in response are unavailing. Specifically, Plaintiff argues that Dr. Dibble's report "glosses over" the results of a report from Dr. Miller, who determined that Ms. Boggs' symptoms may have an orthopedic origin but found no symptoms of a significant gastrointestinal condition. Plaintiff maintains that this "orthopedic cause" is confirmed by the September 7, 2002 MRI report (which allegedly confirms an August 13, 2004 x-ray report) and Dr. Lewis' statement that Ms. Boggs has "multilevel degenerative disc disease with mild to moderate central stenosis at L4/5." According to Plaintiff, Dr. Dibble ignored the "moderate" condition finding in his report. Moreover, Plaintiff points to the statements made by Dr. Miller and Dr. Mary Phillips, a consulting physician, that Plaintiff would be unable to work due to her symptoms.

The Court finds Plaintiff's arguments to be without merit. As correctly pointed out by the Defendant, Dr. Dibble noted Dr. Miller's findings in his report

as well as the fact that Plaintiff did not have abnormal abdominal findings and concluded that Plaintiff's complaints were "most characteristic of a gastrointestinal etiology." Further, the record reveals that Dr. Dibble did not misquote the MRI report in his report but stated that Plaintiff's MRI "showed changes of mild degenerative disc disease" and "mild to moderate central canal stenosis."

Plaintiff also argues that Hartford must rely solely on the written record of treatment, analysis and reports in its evaluation of her claim (which, according to Plaintiff, reveal that every treating physician found that she was unable to work), rather than verbal statements allegedly made by Dr. Lewis during a phone conversation with Dr. Dibble, wherein Dr. Lewis allegedly described Ms. Boggs' condition as "vague." Plaintiff argues that this statement is unreliable, given pre-existing reports in the record dated September and October, 2002, wherein Dr. Lewis recites degenerative disc disease and dates of disability.

Again, the Defendant correctly points out that Dr. Dibble afforded Dr. Lewis and Dr. Miller an opportunity to correct any errors they may have found in Dr. Dibble's recitation of their conclusions. Specifically, Dr. Dibble wrote to the doctors setting forth their conversations. In his letter to Dr. Lewis, Dr. Dibble recalled Dr. Lewis' conclusion that Plaintiff's "diagnosis was not clear" and

-13-

description of Plaintiff's diagnosis as "vague." Dr. Dibble also reminded Dr.

Lewis that "[i]t was [his] opinion that her workplace incapacity was due to the

magnitude of her subjective pain symptomatology." In his letter to Dr. Miller, Dr.

Dibble specifically referenced Dr. Miller's opinion that Plaintiff's

"symptomatology was greater than would be expected with her objective physical

examination and laboratory findings" and his statement that he "not aware of any

features of this symptomatology that would prevent her from undertaking her work

as a pharmacist."

The Court notes that, in addition to affording Drs. Lewis and Miller an

opportunity to add to and/or correct their impressions, Dr. Dibble also provided a

fax number and clearly advised "[i]f I not hear from you, I will assume that my

report of our discussion is accurate." As neither Dr. Lewis nor Dr. Miller

responded to or disagreed with Dr. Dibble's report, the Court is sufficiently

persuaded that Dr. Dibble's report accurately reflects Dr. Lewis' and Dr. Miller's

impressions.

The Court finds that the Administrator's decision to deny Plaintiff benefits

is supported by substantial evidence. Plaintiff simply failed to submit

"satisfactory proof" demonstrating that her condition was of a severity to render

her "unable to do the material and substantial duties of [her] occupation"

continuously throughout a 14-day elimination period.  Moreover, the Court finds that the Defendant had a reasoned explanation for denying benefits, given the lack of objective medical evidence to support Plaintiff's claim and the fact that Dr. Lewis and Dr. Miller could not explain Plaintiff's subjective complaints of abdominal and back pain.  Accordingly, the Court concludes that the administrator's decision to deny Plaintiff benefits under the Plan was not arbitrary and capricious and the Defendant is entitled to judgment on the merits.

**ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

(1) the Defendant's Motion to Strike [Record No. 12] is **SUSTAINED**;

(2) the Plaintiff's Motion for Summary Judgment [Record No. 9] is **OVERRULED**;

(3) the Defendant's Motion for Judgment on the Merits [Record No. 8] is **SUSTAINED**; and

(4) a Judgment in favor of the Defendant shall issue contemporaneously herewith.

This ___*10*___ day of ___*January*___, 2006.

Henry R. Wilhoit, Jr.
Senior U.S. District Judge

-16-